DAYTON POWER & LIGHT COMPANY, APPLICATION, IN RE.

Public Utilities Commission.

No. 27149. Decided March 7, 1958.

44

*Mr. Julian de Bruyn Kops* and *Mr. J. R. Newlin*, for The Dayton Power and Light Company, Applicant.

*Mr. Donald S. Riley*, solicitor, for the Village of Greenfield, Protestant.

*Finding and Order*

The Commission coming now to consider the above entitled Application and the exhibits attached thereto; the matters contained in the Report of the Secretary, issued pursuant to the provisions of Section 4909.18, Revised Code; the testimony and exhibits adduced at the public hearing held on November 19, 1957; and, being otherwise fully advised in the premises and in compliance with Section 4903.09, Revised Code, hereby renders the following Opinion:

*Nature of Proceeding—*

By this Application, filed by the Dayton Power & Light Company pursuant to the provisions of Sections 4909.17, 4909.-18 and 4909.19, Revised Code, the Applicant utility seeks to institute new and increased rates and charges for the sale of natural gas in the Village of Greenfield and the territory immediately adjacent thereto which is served by the same distribution system as the Village of Greenfield.

*History of Proceedings to Date—*

August 6, 1957    Application filed by Dayton Power & Light Company.

August 6, 1957  Motion filed requesting Commission to waive the filing of a detailed inventory and appraisal and certain statutory exhibits, and to authorize utility to file substitute exhibits therefor.

August 27, 1957  Public hearing held on the motion of August 6, 1957.

September 6, 1957  Entry issued granting Applicant's Motion of August 6, 1957 and fixing December 31, 1956 as the date certain for purposes of this proceeding.

September 10, 1957  Report of Secretary, required by Section 4909.18, Revised Code, filed and served upon all parties entitled to be served.

October 8, 1957  Entry issued approving the form of legal notice.

November 19, 1957  Application heard before the Commission.

*Summary of Applicant's Evidence—*

The following witnesses testified in support of the Application:

*Malcolm G. Davis,* a consulting engineer and Vice President of Gilbert Associates, Inc.; *George N. Finley,* Supervisor of the Gas Division, Washington C. H. District, of Dayton Power & Light Company; *William Thompson Smith,* professional engineer of Ford, Bacon & Davis, Inc., New York City; *Josiah V. Colley,* Vice President and Treasurer, Dayton Power & Light; *Paul C. Hoy,* Supervisor of Corrosion Control Department, Dayton Power & Light; *Richard T. Stanze,* Supervisor in Charge of Marketing & Rates; *C. Russell Dole,* Chief Civil Engineer of Dayton Power & Light; *Robert E. McCormick,* Head of Taxes, Budget & Property Accounting Department of Dayton Power & Light.

The testimony of such witnesses indicates that the Dayton Power & Light Company has its principal place of business at Dayton, Ohio and is presently engaged in the business of purchasing, distributing and selling natural gas to consumers in thirteen counties in the southwestern part of the State of Ohio; as such, the Dayton Power & Light Company is a "public utility" and a "natural gas company" as defined in Sections 4901.01, 4905.02 and 4905.03, Revised Code.

For a considerable period of time, this Applicant has been selling natural gas to consumers residing in both the Village of Greenfield, Ohio, and an unincorporated area immediately adjacent to said Village, all of which consumers are served through the same distribution system. Company Exhibit A, Section No. 1, sets forth the estimated valuation of the Applicant's plant and property as of December 1, 1956, used and useful in the furnishing of natural gas service to consumers residing in the Village of Greenfield and adjacent territory. In that Exhibit, the Company claims a reproduction cost new valuation of $552,130.20, existing depreciation of $76,416.27, thereby producing a Company valued rate base of $475,713.93. Upon such rate base, the Applicant's proposed increase in rates and charges would provide a rate of return of 4.71%.

The existing depreciation plant and property allocated to said Greenfield area was estimated in the amount of $76,416.27. Witnesses for Applicant testified to the scope of the percent condition study made of certain portions of the Applicant's allowable plant and property. Testimony of Company witness Dole related to the percent condition of the Applicant's building utilized in the rendition of gas service in the Greenfield area. Witness Hoy testified that he had made a survey with regard to soil conditions in Greenfield, Ohio, and adjacent territory, stating that he found generally the soil to be of such character which would not unnecessarily or abnormally errode underground gas pipe.

Witness Stanze testified in some detail as to the proposed rates and their result upon annual revenues, should such proposed rates be authorized.

Testimony of Company witness Robert C. McCormick related to the valuation of the Company's allocated plant and property, as filed by Applicant, the witness stating that in his opinion, if the Company had applied the percent of existing depreciation subsequently determined by the Commission's engineering staff in its examination, the net statutory Rate Base submitted by the Company would have been increased by approximately $21,000.00.

Company witness Malcolm G. Davis testified that, in his opinion, the composite cost of capital to this Applicant was

6.11%, and that the rate of return should be in excess thereof.

*Summary of Protestant Testimony*—

George Donnels, member of the Greenfield Village Council, testified in opposition to the Application. He stated that the Village of Greenfield had incurred considerable civic expenditures in the past few months: $230,000.00 was expended to expand its sewer system, and revenue bonds had been issued to pay for such expansion; revenue bonds in the total amount of $200,000.00 were also issued to finance the expansion of the local hospital; and, remodeling of the Town Hall would also require the expenditure of additional local funds. He further testified that a bond issue for school purposes had been defeated recently, it being his opinion that this issue failed due to the depressed status of the economic conditions existing in the Village of Greenfield. Councilman Donnels also stated that there had not been any substantial increases in wages or salaries of residents of Greenfield within the past few months.

Donald Robbins, a resident of Greenfield, likewise appeared as a witness in opposition to the Application. He is employed by the Water & Light Department of the Village of Greenfield and he testified that, after paying his rent and other special essentials, he had only $65.83 remaining to pay his gas bill, gasoline for his car, doctor's bills, clothes and other items. He stated that his gas bills amount to $4.00 to $7.00 per month during the summer season and $10.00 to $15.00 during the winter months.

The purpose of Protestant's testimony was, as summarized by the Village Solicitor, that the consumers in and around the Village of Greenfield were of an economic level which could not afford an increase in their gas rates at this time, irrespective of the propriety of such increase in rates.

*Information Contained in the Secretary's Report*

The Report of the Secretary in this case, which is required under the provisions of Section 4909.18, Revised Code, was duly filed under date of September 10, 1957. Copies of the Report were served upon all parties required by statute to receive service. No objections were field to the Secretary's Report.

The valuation of the Applicant's plant and property allocated to rendition of natural gas service in the Greenfield area,

as determined by the Commission engineers, was set forth in the Secretary's Report as follows:

Reproduction Cost New ...............$531,415.77
*Less* Existing Depreciation (18.05%) .....  97,410.16

Reproduction Cost New Less Existing
   Depreciation ........................ 434,005.61
*Plus*—Materials and Supplies ............  8,119.99

   $442,125.60

*Plus*—Working Capital Computed by Public
   Utilities Commission of Ohio
   Accountants ..................... 11,866.52
Public Utilities Commission of Ohio Staff
   recommended Statutory Rate Base .....

   $453,992.12

The auditing investigation of Applicant's books and records by the Commission's accounting staff, as contained in the Secretary's Report, indicates the effect of the proposed rate increase sought by this Applicant when applied to the statutory Rate Base of $453,992.12 recommended by the Commission's engineers:

| | *Present* | *Proposed* |
|---|---|---|
| Total Operating Revenues | $224,723.16 | $266,308.50 |
| Total Operating Expenses | 217,364.76 | 243,594.06 |
| Income Available for Fixed Charges | $ 7,358.40 | $ 22,714.44 |
| Rate of Return on statutory Rate Base of $453,992.12 recommended by Public Utilities Commission of Ohio staff | 1.62% | 5.00% |

*Commission Discussion*

### Rate Base

| | |
|---|---:|
| Company's Claimed Rate Base ................. | $475,713.93 |
| Public Utilities Commission of Ohio staff recommended Rate Base ............. | 453,992.12 |
| Differentiation .....$ | 21,721.81 |

The Company filed no objections to the rate base recommended by the Commission staff. The difference in the dollar amount between the two valuations is due principally to the greater amount estimated by the Commission engineers for existing depreciation of Applicant's allocated plant and property: the Company estimating the percent condition of its property as being about 86%, while the staff's estimate was approximately 82%.

The Commission accepts and will use for the purpose of this proceeding the valuations recommended by its staff except for the adjustment noted below. The staff's recommended rate base includes $11,866.52 for working capital. The Commission finds that an offset of $10,000 (50% of income tax accruals) should be effected against the aforesaid sum of $11,866.52 computed for working capital. *City of Cincinnati* v. *Public Utilities Commission of Ohio,* 161 Ohio St., 395. After making this adjustment the Commission finds the statutory Rate Base to be $443,992.12.

### Rate of Return

Company Witness Davis testified that the fair rate of return should be in the range of 6.3% to 6.6% based upon a composite cost of capital of 6.11%. The Commission, after giving due consideration to said cost of money testimony, is of the opinion that costs of capital so calculated upon statistical data, the precise relevancy of which may be questionable, and so dependent upon the degree of judgment of the witness as in the instant case, should be accorded something less than controlling weight. This follows especially in view of the fact that on the basis of the Company's alleged expenses and esti-

mated anticipated revenues, the proposed rates sought by the Applicant herein result arithmetically in a rate of return of 4.71% on the Applicant's claimed Rate Base.

The Commission, after giving due consideration to the earnings requirements of this Applicant utility having a statutory Rate Base of $443,992.12, determines and finds the fair rate of return to be 5.0%. In testing the reasonableness of this determination the Commission finds that this rate of return applied to the statutory Rate Base will provide an allowable annual return sufficient to enable the Applicant to pay a dividend of 6.5% on an amount of equity capital equivalent to the equity portion of the statutory Rate Base valuation and make a reservation for surplus on the basis of a pay out ratio of approximately 70%; and, further, that the resulting earnings on the Applicant's actual common stock equity will approximate 15%.

### Return

Application of the rate of return of 5.0%, as found herein, to the statutory Rate Base of $443,992.12 yields Applicant an annual return of $22,199.61.

### Expenses

(A) *Expenses other than Federal Income Taxes*

The Commission finds these expenses to total $211,163.02. This amount has been determined by making the following adjustments in certain expenses appearing in the Staff's Accounting Report, Schedule No. 1 attached to the Secretary's Report, under the heading "Pro Forma Total, Column (5)."

(1) "Natural Gas Purchased," listed by the Staff in the amount of $163,207.61, is reduced $11,363.08. The expense for this item in the Accounting staff's Report is computed at an average rate of approximately 49c per MCF. It was determined by applying a contract demand type of rate schedule approved by the Federal Power Commission for sales for re-sale by the Company's principal gas supplier and was included by the Commission's Accounting staff without editorial consideration.

The Commission rejects this computation for two reasons. First, the rate of 49c per MCF is subject to refund (F. P. C. Docket G-2281). While the Company would be required to pass

on to its commercial and industrial customers a portion of such refund, the residential customers, who account for about 85% of the revenue to be realized by Applicant in this proceeding, would receive no refund.

Secondly, this rate appears to be overstated in that an improper relationship between MCF (commodity) and MCF (demand) has been employed: the MCF (commodity) has been taken for the calendar year 1956, and the MCF (demand) has been taken for January, 1957, although during the year 1956, customers were added to the Company's lines. Under normal conditions, an increase in customers is accompanied by an increase in both commodity and demand MCF. As the commodity rate is 32.43c per MCF, it would appear evident that the average rate of 49c per MCF is overstated where that rate has been determined by raising the demand charge for added customers but, at the same time, failing to give consideration to the added MCF used by those customers.

It is to be noted in this connection that the Federal Power Commission, in addition to the demand commodity type rate which it ordered in Docket G-2281, also ordered the Company's principal gas supplier to file an optional straight commodity rate of 45c per MCF available to its relatively small wholesale customers. The gas requirements of the Greenfield area are such as to come within the limitations contained in this optional rate schedule; however, the Company does not buy gas for re-sale under this optional rate schedule. The Company buys gas under the regular rate schedule and the price per MCF paid by the Company for gas purchased from its principal supplier under this schedule in 1956 was 45.39c.

The Commission finds, therefore, that the Company has not proven the reasonableness of its claimed expense for the cost of purchased gas. Accordingly, the Commission has computed this item of operating expense based on the Company's actual average cost of 45.39c per MCF. The application of this 45.39c rate to the 1956 gas purchases for the Greenfield area results in an expense for "Natural Gas Purchased" of $151,844.53.

(2) Wages, Taxes, Depreciation are reduced $2,901.95 by the Commission. The expenses for these items have been annualized in the Staff Report in the amount of $2,901.95. How-

ever, no annualization of revenues was made. The Commission finds that for the purposes of this proceeding, wherein the Rate Base is determined at the end of the test period, that the use of actual expenses for the above items is proper and better reflects the factual relationship between the utility's expenses and revenues.

(3) Rate Case Expense is increased $2,900.00 by the Commission. This item of expense appears in the Accounting Staff's Report in the amount of $600, it being considered an aggregate expense of $1200 amortized over two years. The Company, however, claims expenses of $7000 directly attendant to the processing of this rate proceeding. The Commission is of the opinion this amount should be allowed and finds the annual expense to be $3500 on the basis of amortization over a two-year period.

(4) Taxes on revenues are reduced in the amount of $478.35. In the Accounting Staff Report the allowance for these taxes was based on increased revenues of $41,585. This reduction in these taxes results from the lesser amount of increased revenues determined herein by the Commission.

(B) *Federal Income Taxes*

The Commission finds the income taxes at the level of rates, herein determined and ordered, to be $20,029.93.

*Required Revenues*

The Commission finds such rates and charges to be just and reasonable for the utility services rendered by this Applicant as will yield allowable annual gross revenues of $253,-392.56, said gross revenues affording Applicant an annual net return on "income for fixed charges" of $22,199.61, which return the Commission determines to represent a yearly reasonable compensation for this Applicant's services under the facts of this proceeding. This determination may be summarized for illustrative purposes as follows:

| | |
|---|---|
| Expenses other than Federal Income Taxes | $211,163.02 |
| Federal Income Taxes | 20,029.93 |
| Annual Net Return | 22,199.61 |
| | |
| Total of Annual Gross Revenues | $253,392.56 |

Rates and charges yielding the above gross revenues will require an increase in Applicant's present rates of approximately 12.75%; the Company's proposed increased rates being at a level of approximately 18.50% above its present rates.

*Ultimate Findings—*

From the testimony of record, the Commission makes the following ultimate Findings:

(1) That this Application is filed in pursuant to, and this Commission has jurisdiction thereof under the provisions of Sections 4909.17, 4909.18, and 4909.19 of the Revised Code;

(2) That the investigation required of the Commission by the provisions of Section 4909.18, Revised Code, has been duly made, and the Report thereof has been filed and served as required by said statute;

(3) That the Applicant's statutory Rate Base for the purposes of this case is $443,992.12;

(4) That the fair annual rate of return on said statutory Rate Base, for the purposes of this case, is 5.0%;

(5) That the dollar annual return to which this Applicant is entitled for the purpose of this case is $22,199.61;

(6) That the dollar amount of the cost for Applicant to render its utility services or its annual expenses for the purpose of this case are, with the inclusion of Federal Income Taxes, $231,192.95;

(7) That the allowable gross annual revenues for the purpose of this case are $253,392.56; and,

(8) That this Applicant should file with this Commission for its approval tariff schedules which will yield approximately $253,392.56 in total gross annual revenues for the purposes of this rate proceeding.

*Order*

It is, therefore,

Ordered, That in accordance with the Findings and opinion herein set forth, the Applicant, Dayton Power & Light Company, be, and the same hereby is authorized to file with this Commission for its approval adjusted tariff schedules which will provide said Applicant with total gross annual revenues of approximately $253,392.56. It is, further

Ordered, That such tariff schedules shall become effective

54

forthwith upon their approval by this Commission or upon such subsequent date the Commission may designate.

The Public Utilities Commission of Ohio

Entered in Journal      Everett H. Krueger, Jr., Chairman
March 7, 1958      Ralph A. Winter
A true copy:      Edward J. Kenealy
W. E. Herron                   Commissioners
W. E. Herron, Secretary